UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PASTIME LLC et al.,

                Plaintiffs,

              -v-

LEE SCHREIBER,

                Defendant.

16-CV-8706 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      At the center of this case is a play, titled "Once Upon a Pastime," which its creators hope to mount as a successful stage production. But before that can happen, the characters in this case have to resolve their own drama: Who owns the rights to the play? Defendant Lee Schreiber holds a registration from the U.S. Copyright Office listing him as the play's sole author, but Plaintiffs Pastime LLC, Dennis M. Mnogue (personally known as Terry Cashman), PKM Music, and Metrostar Music (collectively, "Pastime") claim that Schreiber's employment contract divested him of any copyright in the work. Instead, Pastime claims that the play's owners transferred their copyrights to Pastime, making Pastime the lawful owner of "Once Upon a Pastime."

      In this action, Pastime asks this Court to declare it the play's rightful owner and to nullify Schreiber's registration. Schreiber has moved to dismiss Pastime's Complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, Schreiber's motion is granted in part and denied in part.

**I.    Background**

      The following facts are taken from the Complaint and attached exhibits, and are presumed true for purposes of deciding Schreiber's motion to dismiss.

1

Over a decade ago, Warren Baker and Sally Jacobs-Baker ("the Bakers") set out to produce a musical titled "Passin' It On." (Dkt. No. 1 ("Compl.") ¶ 8; Dkt. No. 1-1.) The Bakers acquired rights to the play from PKM Music and Terry Cashman, who had written the music, and commissioned author Larry Atlas to write the book for the project. (Compl. ¶ 8.) After a few underwhelming first-run performances of "Passin' It On," the Bakers hired Schreiber and Cashman to rewrite Atlas's book under a new title, "Once Upon a Pastime." (Compl. ¶¶ 9, 12.)

But the Bakers were dissatisfied with the rewrite and decided to withdraw as producers. (Compl. ¶¶ 12, 14.) Not wanting to abandon the project, Cashman, PKM Music, and Metrostar Music entered into a deal with the Bakers, which resulted in the Bakers' transferring their rights in the musical to Cashman and PKM Music. (Compl. ¶ 14–15.) Cashman, PKM Music, and Metrostar Music subsequently transferred their rights to Pastime LLC. (Compl. ¶ 15.)

Still looking to attract investors and producers, PKM Music and Metrostar Music began presenting readings of the musical. The first two readings occurred at the York Theater in New York City. (Compl. ¶ 16.) Schreiber made some revisions between the first and second readings, but the musical received no offers. (*Id.*) Although Schreiber requested the opportunity to make further revisions, Cashman decided instead to contract with a more experienced author, James Glossman. (Compl. ¶¶ 17–18.) The second set of readings, now of the Glossman-Cashman vintage, were held at Montclair State University. (Compl. ¶ 18.) No offers were made, and more revisions followed. (*Id.*) Finally, a third attempt at a New York City rehearsal hall generated some interest, and producer Armand Paganelli undertook a production of the musical for five performances at the White Plains Performing Arts Center. (Compl. ¶ 19.)

This is where the Pastime's budding success story hit a snag: In May 2016, Schreiber confronted Paganelli at the White Plains Performing Arts Center and orally threatened to sue him

2

for infringing Schreiber's rights in the musical. (*Id.*) As a result, Paganelli has not made any further plans to produce the musical, and he plans to defer decision on further productions until Schreiber's claims are resolved. (*Id.*)

Schreiber and Pastime have competing claims to authorship—and ownership—of the musical. On the one hand, Schreiber holds a registration from the U.S. Copyright Office that lists him as the sole author of "Once Upon a Pastime." (Compl. ¶ 20.) On the other hand, Pastime points to Schreiber's original employment agreement with the Bakers, which states:

> You acknowledge and agree . . . that the Book . . . was specifically commissioned by [the Bakers] and shall be considered for copyright . . . purposes a "contribution to a collective work" and a "work for hire" for [the Bakers] . . . . [The Bakers] are, therefore the owner[s] of all rights in and to the Book and all copyrights therein . . . .

(Dkt. No. 1-1 ¶ 6; *see also* Compl. ¶¶ 10–12.) Pastime argues that, in light of Schreiber's employment agreement, "Schreiber intentionally falsified the writing and ownership information in his copyright registration application." (Compl. ¶ 21.)

Pastime filed this action for a declaratory judgment to resolve the competing claims to "Once Upon a Pastime."[1] In response, Schreiber argues that Pastime has not asked for any relief that this Court has the capacity to grant. Schreiber moves to dismiss the Complaint for failure to state a claim upon which can be granted under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 25). Where appropriate, this Court also considers Schreiber's motion as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

---

[1] As a technical matter, the play "Once Upon a Pastime" is protected by a bundle of copyrights in various creative elements such as the script, music, and choreography. Only the linguistic elements of the play—that is, the lyrics, screenplay, and script—are at issue in this case. However, for purposes of resolving the instant motion, the Court will sacrifice precision for readability and refer to the rights in dispute as rights to "Once Upon a Pastime," "the play," or "the musical."

3

## II. Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (first quoting Fed. R. Civ. P. 8(a)(2), then quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). When considering a motion to dismiss under Rule 12(b)(6), courts "must accept as true all of the factual allegations contained in the complaint," *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)), and must draw "all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.).

Because federal courts are courts of limited subject matter jurisdiction, "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[T]he plaintiff bears the burden to prove subject-matter jurisdiction by a preponderance of the evidence." *Morrow v. Ann Inc.*, No. 16 Civ. 3340, 2017 WL 363001, at *2 (S.D.N.Y. Jan. 24, 2017). "When considering a motion to dismiss for lack of subject matter jurisdiction . . . , a court must accept as true all material factual allegations in the complaint . . . [b]ut . . . jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

4

**III.     Discussion**

This case is about who owns the rights to "Once Upon a Pastime," but Schreiber's motion to dismiss presents a play-within-a-play (about a play). Specifically, the parties have thus far concerned themselves with litigating how to characterize their dispute. Schreiber characterizes the Complaint as asserting a claim for fraud on the U.S. Copyright Office and then argues that "there is no affirmative private right of action" for such fraud. (Dkt. No. 27 at 2.) Pastime, in response, argues that its Complaint states a claim "for a declaration of the parties' respective ownership rights in [the musical], and for cancellation of [Schreiber's] copyright registration." (Dkt. No. 30 at 6.)

Pastime's Complaint raises two distinct issues: (1) the validity of Schreiber's *registration*; and (2) rightful ownership of the *copyright*. Although "copyright" and "registration" are sometimes treated as synonyms in common parlance, it is important to distinguish these two legal concepts. A copyright "exists automatically upon the creation and fixation of an original work of authorship in a tangible medium of expression." *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp. 2d 343, 350 (S.D.N.Y. 2001); *see also* 17 U.S.C. § 102(a) ("Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated . . . ."). A registration, in contrast, is granted by the Copyright Office, and the Copyright Act conditions certain statutory benefits—most notably, the right to sue for infringement—on registration. *See Chere Amie*, 191 F. Supp. 2d at 350. In other words, copyrights exist by virtue of the author's creation, while copyright registrations exist by grant of the Copyright Office.

Having clarified this distinction, the Court divides Pastime's potential causes of action into two categories: registration-related and ownership-related requests for relief. The Court addresses each in turn.

### A. Registration-Related Requests for Relief

Pastime's Complaint is not a model of clarity when it comes to articulating its purported causes of action or requests for relief. But at least one of Pastime's requests is unambiguously clear: Pastime asks the Court to grant "Cancellation and Nullification of Copyright Registration #Pau00373988"—Schreiber's registration number. (Compl. at 9). This the Court cannot do.

Nothing in the Copyright Act, nor any other federal statute, grants federal courts the power to cancel or nullify a copyright registration. As the Third Circuit explained in *Brownstein v. Lindsay*, "there is evidence that the statute does not give courts any such authority" because "[s]ection 701, which describes the functions of the Copyright Office, explicitly states that '[a]ll administrative functions and duties under this title, *except as otherwise specified*, are the responsibility of the Register of Copyrights.'" 742 F.3d 55, 75 (3d Cir. 2014) (alterations in original) (quoting 17 U.S.C. § 701(a)). Furthermore, it is significant that a separate section of the Copyright Act *does* grant federal courts the authority to cancel registrations for "original designs." *See id.* at 76; 17 U.S.C. § 1324. This Court joins the *Brownstein* court's conclusion that "§ 1324 would be superfluous if Congress intended for courts to already have the general authority to cancel copyright registrations," and that "[i]n carving out a specific power of cancellation, this provision only further suggests that courts have no general authority to cancel copyright registrations." *Brownstein*, 742 F.3d at 76. In short, "no private cause of action exists to cancel a registration."[2] 5 *Patry on Copyright* § 17:108.

---

[2] Pastime also asks this Court to direct the U.S. Copyright Office to register Pastime's competing registration application. (*See* Compl. ¶ 35(J).) "All actions of the

Schreiber interprets the Complaint differently, arguing that the Complaint "assert[s] a claim for fraud on the U.S. Copyright Office." (Dkt. No. 27 at 4.) Pastime, however, unambiguously disclaims Schreiber's interpretation. (*See* Dkt. No. 30 at 6 ("[T]he Complaint does not assert a claim for 'fraud on the U.S. Copyright Office.'").) As a result, the Court finds it unnecessary to opine at length on the existence of a cause of action that Pastime has explicitly waived.[3] The Court notes, however, that the absence of a cause of action for fraud on the Copyright Office comports with the absence of a cause of action for cancellation of a copyright registration. *See Vaad L'Hafotzas Sichos, Inc. v. Krinsky*, 133 F. Supp. 3d 527, 537 (E.D.N.Y. 2015) (rejecting a party's request for "affirmative relief in the form of cancellation of the registration . . . [because] 'there is no precedent supporting the use of a claim for fraud on the Copyright Office as an affirmative cause of action'" (quoting *Kwan v. Schlein*, 2008 WL 4755345, *2 (S.D.N.Y. Oct. 30, 2008))).

Consequently, the Court grants Schreiber's motion to dismiss Pastime's claims for nullification and cancellation of Schreiber's copyright registration. By dismissing Pastime's Complaint insofar as it seeks cancellation of Schreiber's registration, however, the Court does not imply that the validity of Schreiber's registration is beyond question. Indeed, future

---

Copyright Office are subject to the Administrative Procedure Act ('APA') and the judicial review attendant to the APA," and consequently "aggrieved parties may challenge an unfavorable decision by the Copyright Office . . . by challenging its decision in court under the APA." *Brownstein*, 742 F.3d at 76. However, Pastime's current Complaint—even if liberally construed—does not plead an action under the APA, so the Court dismisses any claim requesting that that the Court direct the Copyright Office to grant Pastime's registration application.

[3] In any event, the Court concludes that the better reading is Pastime's: The Complaint asserts a cause of action "for a declaration of the parties' respective ownership rights in the subject literary work, and for cancellation of Defendant's copyright registration." (Dkt. No. 30 at 6.)

litigation may demonstrate that Schreiber's registration is invalid. As the Third Circuit observed in *Brownstein*:

> [C]ourts are authorized to police copyright registrations through authorship claims and infringement claims. . . . [W]e are in no way holding that courts are incapable of invalidating underlying copyrights. . . . Holding that federal courts have the authority to cancel registrations would essentially be declaring that the judicial branch has the authority to order a legislative branch agency that is not a party to the litigation to take an affirmative action. A federal court's finding that a copyright is invalid, on the other hand, is a determination of ownership which does not disturb the registration of a copyright.

742 F.3d at 76–77.

### B. Ownership-Related Requests for Relief

Although Pastime cannot state a claim upon which relief can be granted with respect to Schreiber's *registration*, the Court concludes that Pastime has stated a cognizable claim for a declaratory judgment as to ownership rights in "Once Upon a Pastime."

As a prerequisite, the Court must first satisfy itself that such a claim appears in the Complaint. The Court concludes that the Complaint, although not as explicit as it could be, contains sufficient information to state a claim "for a declaration of the parties' respective ownership rights." (Dkt. No. 30 at 6.) The "Cause of Action" section of the Complaint states that: (1) "Schreiber's claim to own the copyright in and to the [musical], and to being its sole writer, is intentionally fraudulent . . . and in violation of the . . . Copyright Act"; (2) "Pastime LLC is the sole owner of the copyrights in the Musical"; and (3) "[a] Declaratory Judgment . . . would serve a useful purpose in clarifying and settling the respective rights and obligations of the parties." (Compl. ¶¶ 26, 31–32.) Furthermore, the Complaint's "Prayer for Relief" section requests an order declaring that: (1) "Pastime . . . is the rightful and sole owner of the copyright in and to the [musical]"; (2) "Schreiber has no copyright interest . . . in or to the Musical"; (3)

8

"Schreiber's writing services were rendered as an employee for hire so that . . . the book is a work for hire and is owned by Pastime LLC"; and (4) "Schreiber is not the sole author of the [musical]." (Compl. ¶ 35.) Taken together, these statements are more than sufficient to meet Rule 8(a)(2)'s requirement that the Complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

The Court must next determine if there is federal subject matter jurisdiction over an action to define ownership rights in "Once Upon a Pastime." Because Pastime does not allege diversity jurisdiction under 28 U.S.C. § 1332, this Court has subject matter jurisdiction only if this action "aris[es] under" federal copyright law. *See* 28 U.S.C. § 1338.[4] Judge Friendly announced the Second Circuit's test for arising-under-copyright jurisdiction in *T. B. Harms Co. v. Eliscu*:

> [A]n action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement . . . , or asserts a claim requiring construction of the Act, . . . or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.

339 F.2d 823, 828 (2d Cir. 1964); *see also Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 355 (2d Cir. 2000) (reaffirming that "this circuit's standard for determining jurisdiction under Section 1338 is furnished by *T.B. Harms*"). As the Second Circuit articulated more recently in *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, "[f]or an action to arise under [the Copyright Act], the plaintiff's well-pleaded complaint must establish either that the act creates the cause of action

---

4 Usually, arising-under federal jurisdiction is defined by 28 U.S.C. § 1331; however, 28 U.S.C. § 1338(a) creates a more specific (and exclusive) grant of original jurisdiction to federal district courts over "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."

9

or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of law under the act." 373 F.3d 296, 303–04 (2d Cir. 2004).

This case falls within the second *T. B. Harms* category because the Complaint asserts a claim that will require construction of the Copyright Act. Specifically, the Copyright Act dictates that "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author . . . and . . . owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b). Section 101 of the Copyright Act then defines a "work made for hire" as "a work prepared by an employee within the scope of his or her employment" or "a work specially ordered or commissioned for use as a contribution to a collective work." 17 U.S.C. § 101.

Pastime alleges that Schreiber cannot claim any ownership rights in the musical because—per his employment agreement—his contribution was a work for hire. (*See* Compl. ¶¶ 10–12.) Whether Schreiber can claim any ownership in "Once Upon a Pastime" turns on this Court's interpretation and application of the Copyright Act's "works made for hire" provision. Consequently, Pastime has sufficiently alleged federal-question jurisdiction to survive a motion to dismiss under *T.B. Harms*. *Accord Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (holding that a case required construction of the Copyright Act where "[d]efendants offer[ed] a number of arguments as to why Plaintiffs' contribution to [a] song [was] legally insufficient to make them joint authors . . . , and why [a record-company owner's] contribution sufficed to make him a joint author (for example, based on the 'work for hire' doctrine)" (citations omitted)); *RX Data Corp. v. Dep't of Soc. Servs.*, 684 F.2d 192, 196 n.1 (2d Cir. 1982) (explaining that "[w]hether [the defendant] has title to the copyrights because they are found to be 'works made for hire' under 17 U.S.C. §§ 101, 201(b) (Supp. IV 1980) would be a question of federal law requiring an

interpretation of the Copyright Act"); *see also Cohen v. Versatile Studios, Inc.*, No. 13 Civ. 08280, 2014 WL 1584055, at *2 (S.D.N.Y. Apr. 21, 2014) ("[A] dispute that turns on whether a copyrighted work was created independently or as a 'work made for hire' is an *ownership dispute* that unquestionably arises under the Copyright Act." (quoting *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 845 (D.C. Cir. 2002)) (internal quotation marks omitted)).[5]

Finally, the Court concludes that Pastime's Complaint presents "a case of actual controversy" for which the Court "may declare the rights and other legal relations" of the parties pursuant to the Declaratory Judgment Act ("DJA").[6] 28 U.S.C. § 2201. Plaintiff has shown that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Schreiber and Pastime have a definite and substantial dispute over ownership rights in "Once Upon a Pastime," and Schreiber's claims to ownership and threat to sue for infringement give immediacy and concreteness to the controversy between the parties. *See Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013) ("[T]he threat of future litigation remains relevant in determining whether an actual

---

[5] Schreiber cites *Simon & Flynn, Inc. v. Time Inc.* for the proposition that "an aroma of copyright" does not suffice to establish arising-under jurisdiction. 513 F.2d 832, 833 (2d Cir. 1975). But Schreiber's reliance on *Simon & Flynn* is misplaced because that case did not concern a work for hire. The Court also observes that the Second Circuit decided *Simon & Flynn* before the Copyright Act of 1976, which represented a "comprehensive revision" to the previous Copyright Act of 1909, and, consequently, substantially changed the situations that may require judicial construction of the Act. 1 *Nimmer on Copyright* intro.

[6] While the DJA makes the remedy of a declaratory judgment available in federal court, it does not create a stand-alone basis for federal jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

controversy exists."). The Court further concludes that all five of the Second Circuit's *Dow Jones* factors weigh in favor of entertaining this action for declaratory judgment; in particular, the Court concludes that a declaratory judgment as to the parties' ownership rights "will serve a useful purpose in clarifying or settling the legal issues involved" and "would finalize the controversy and offer relief from uncertainty." *The New York Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) (quoting *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003)).

Consequently, the Court denies Schreiber's motion to dismiss Pastime's claim for a declaration of the parties' respective ownership rights in the musical.

### C. Leave to Amend

Pastime requests that "any dismissal or partial dismissal be without prejudice to the submission of an Amended Complaint" that would add an affirmative claim of infringement. (Dkt. No. 30 at 9.) Because Pastime's Complaint survives Schreiber's motion to dismiss in part, the Court makes no decision as to the propriety of an amended complaint at this time. If it so chooses, Pastime is free to move for leave to amend.

### IV. Conclusion

For the foregoing reasons, Schreiber's motion to dismiss is GRANTED in part and DENIED in part. Pastime's motion to expedite decision is DENIED as moot. Schreiber shall file an answer to the Complaint by December 19, 2017.

The Clerk of Court is directed to close the motions at Docket Numbers 25 and 35.

SO ORDERED.

Dated: December 5, 2017
      New York, New York

_____
J. PAUL OETKEN
United States District Judge